IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
November 15, 2011 Session

## STATE OF TENNESSEE v. DOYLE EVERETTE HANEY

**Appeal from the Circuit Court for Cocke County**
**No. 0216     Ben W. Hooper, II**

**No. E2010-02151-CCA-R3-CD - Filed June 20, 2012**

Following a jury trial, the Defendant, Doyle Everette Haney, was convicted of criminal responsibility for the facilitation of the sale of .5 grams or more of cocaine, a Class C felony, and delivery of .5 grams or more of cocaine, a Class B felony. The trial court merged the two convictions and imposed a sentence of thirty years as a career offender. On appeal, the Defendant challenges the sufficiency of the evidence supporting his convictions, the consistency of the verdicts, the jury instructions, and sentencing. All of his issues could be treated as waived for failure to comply with the requirements for appellate briefs. See Tenn. Ct. Crim. App. R. 10(b). However, after a review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

A. Philip Lomonaco (at trial), Knoxville, Tennessee, and Candice K. Mendez (on appeal), Dandrige, Tennessee, for the appellant, Doyle Everette Haney.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; James B. Dunn, District Attorney General; and Joe C. Crumley, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

This case arises from a controlled drug transaction on August 9, 2006, that took place on Rock City Road in Newport. As a result of this exchange, a Cocke County grand jury charged the Defendant with alternative counts of sale or delivery of .5 grams or more of cocaine.

At trial, Assistant Special Agent James Williams with the Tennessee Bureau of Investigation (TBI) Drug Investigative Division testified that he participated in a controlled purchase of crack cocaine on August 9, 2006, involving Teresa Woodward, an undercover TBI agent, Jacquelyn Dalton, a confidential informant, and the Defendant. Agent Williams assisted in briefing Agent Woodward and Ms. Dalton before the controlled buy; both Ms. Dalton's person and her vehicle were searched. Agent Williams monitored the purchase via transmitting device and recorded the exchange. The audio recording of the transaction was entered as an exhibit and played for the jury.

To facilitate the exchange, Ms. Dalton was given $100, in twenty-dollar bills, to buy an "eight ball" from the Defendant for $150. Agent Woodward had an additional $60 to complete the transaction. Agent Williams explained that this was a control measure, done in order for the parties to have to talk about change.

Ms. Dalton called the Defendant twice to arrange the purchase, but her calls went unanswered. She and Agent Woodward then proceeded to the Defendant's residence on Rock City Road. According to Ms. Dalton, they encountered the Defendant, along with two other men, in "the loop" at "the end of the road." Ms. Dalton knew one of the other individuals as "Steve,"[1] but she was unable to identify the other man. She stopped the vehicle next to a truck, and the Defendant approached.

According to Agent Woodward, as the Defendant approached, she asked him "what he was doing," to which he advised that "he was building a fence." According to Agent Woodward, who was familiar with the Defendant before this transaction, the Defendant "appeared somewhat edgy" that day, meaning that he seemed "nervous or paranoid." The Defendant directed the conversation towards what the two women "wanted." Ms. Dalton responded that she desired an "eight" at a price of $150, and the Defendant agreed to the exchange. The women then combined their respective amounts of cash, $160 total, and Ms. Dalton asked the Defendant if he had $10 in charge.

The Defendant motioned to Ms. Dalton to get out of her vehicle and come "to the other side of the truck" parked beside her. Ms. Dalton estimated that to get to the other side of the truck, required her to travel roughly the "length of a vehicle" or about ten feet. After

---

[1] This man was identified as Steven Allen.

she complied with the request and went to the other side of the truck, the Defendant pointed to a cinder block. Ms. Dalton picked up the cinder block, and inside there was a ten-dollar bill and two "rocks" of crack cocaine. Ms. Dalton placed her money in the block.

During the transaction, one of the rocks fell on the ground, but Ms. Dalton retrieved it. Ms. Dalton was surprised that there were only two rocks of crack cocaine and asked, "Is this it, just two rocks?" Steve, one of the other men, then said, "I'll buy it back from you."

Agent Woodward, sitting in the passenger's seat of Ms. Dalton's vehicle, was able to observe the transaction between Ms. Dalton and the Defendant "from the chest up." Agent Woodward opined that she was approximately five feet away from Ms. Dalton and the Defendant, who were on the opposite side of the other truck. Agent Woodward was not able to hear the conversation, but she saw the two make an exchange. She also witnessed Ms. Dalton bend down to the ground "as if she had dropped something." Agent Woodward estimated that the entire episode lasted between three and five minutes.

According to Agent Woodward, as soon as Ms. Dalton returned to the vehicle, she turned over "two rocks that appeared to be crack cocaine." Later testing by the TBI revealed that the rocks were 1.3 grams of crack cocaine.

When Ms. Dalton returned to debriefing with Agent Williams she was searched again. She had a ten-dollar bill in her possession, which she said was change for her cocaine purchase. Agent Williams also observed that "[o]ne of the rocks appeared to have dirt on it." Although not able to visually observe the exchange, Agent Williams recognized the voices of Agent Woodward, Ms. Dalton, and the Defendant over the transmitting device, but there was an additional voice he was unable to identify. Agent Williams heard the unidentified individual ask after the sale was completed, "Let me buy that back off you."

Ms. Dalton testified at trial that she was positive that she purchased drugs from the Defendant and not one of the other two men present. She stated that she did not observe which individual took the money out of the cinder block.

Ms. Dalton, a nursing student at the time of trial, was thoroughly questioned about her motivations for working as a criminal informant. When asked why she agreed to cooperate in this manner, she responded that she once had a drug problem herself, that her mother was "on the verge of getting over a drug problem[,]" and that she wanted to "make [the] town a better place to live." She was not facing criminal charges at the time she became an informant; she merely "wanted to help get it off the streets." According to Ms. Dalton, she was first approached about helping the TBI by a customer eating at "Lois'" establishment.

On cross-examination, Ms. Dalton confirmed that she got compensated for her assistance if the buy was successful. She was also asked if she was "at risk of losing [her] children . . . to the Department of . . . Child and Family Services." Ms. Dalton replied that she was not at risk of such action because her son lived with his grandparents, who had custody of him, and that she was not currently trying to regain custody of him. She testified that she had been drug-free for approximately two years.

Upon further examination, Ms. Dalton revealed that she had previously been involved in a relationship with the Defendant. However, she claimed that she did not have any "hard feelings" towards the Defendant.

Following a Momon colloquy, see Momon v. State, 18 S.W.3d 159, 161-62 (Tenn. 1999), the Defendant elected not to testify. Thereafter, the jury convicted the Defendant of the lesser-included offense in Count 1 of criminal responsibility for the facilitation of the sale of .5 grams or more of cocaine and as charged in Count 2 of delivery of .5 grams or more cocaine.

At sentencing, the trial court merged the Defendant's conviction in Count 1 into the conviction in Count 2. The trial court then determined that the Defendant qualified as a career offender and imposed a sentence of thirty years for the Class B felony conviction. This appeal followed.

## ANALYSIS

On appeal, the Defendant raises challenges to the sufficiency of the evidence supporting his convictions, the consistency of the verdicts, the jury instructions, and sentencing.[2] The State urges us to deem each and every issue waived. We will address each issue in turn along with the State's specific waiver arguments.

### I. Sufficiency of the Evidence

The Defendant argues that the evidence is insufficient to support his convictions, specifically citing that: (1) the State presented no proof that he engaged in any criminal conduct; (2) neither law enforcement agent observed the Defendant participate in the

---

[2] In the section of the Defendant's brief titled "Question Presented for Review," as his second issue presented, the Defendant claims that there exists "exculpatory evidence and/or facts not in evidence . . . that would support a finding of not guilty[.]" However, the Defendant never elaborates further about the existence of any such evidence in his brief. We will not speculate as to what evidence the Defendant refers, and the Defendant has waived appellate review of the issue. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

purchase; and (3) Ms. Dalton had been romantically involved with the Defendant in the past. He concludes, "The only inference which can possibly be drawn from the evidence is, if Ms. Dalton's testimony is to be believed, is that [the Defendant] was merely present during the transaction."

Initially, the State correctly notes that the Defendant failed to properly cite to the record. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). Waiver notwithstanding, the State contends that the evidence shows that the Defendant sold two rocks of cocaine, weighing 1.3 grams, to a confidential informant and an undercover agent for $150. Moreover, the State notes that assessing the credibility of the confidential informant was the sole province of the jury.

Although waiver would be appropriate, we elect to address the Defendant's sufficiency argument. An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). To that end, the duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

The jury found the Defendant guilty in Count 1 of criminal responsibility for the facilitation of the sale of .5 grams or more of cocaine and in Count 2 of delivery of .5 grams or more of cocaine. As alternate theories of the same offense, the trial court merged the two convictions. Our criminal statutes provide that it is an offense to knowingly sell or deliver a controlled substance. Tenn. Code Ann. § 39-17-417(a)(2) & (3). "[A] person . . . acts

knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39-11-302(b). Although not statutorily defined, a "sale" requires "a bargained-for offer and acceptance, and an actual or constructive transfer or delivery of the subject matter property." State v. Holston, 94 S.W.3d 507, 510 (Tenn. Crim. App. 2002). The terms "deliver" and "delivery" are statutorily defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." Tenn. Code Ann. § 39-17-402(6).

The trial court instructed the jury on a theory of criminal responsibility. A defendant is criminally responsible for an offense committed by another if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2). The trial court also charged the lesser-included offense of facilitation. Tennessee Code Annotated section 39-11-403(a) provides that "[a] person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Facilitation of the commission of a felony is an offense of the next class below the felony facilitated. Tenn. Code Ann. § 39-11-403(b). We note that the Defendant was convicted of facilitation in Count 1, and thus, the jury rejected a theory of criminal responsibility for the sale offense committed by the conduct of another.

The Defendant asserts that the State merely proved his presence at the location where drugs were exchanged but failed to prove that he was the one who engaged in criminal conduct. While this court has held "that mere presence at a location where drugs are sold or mere association with those selling drugs is not sufficient to establish criminal liability," the court added that each case is fact specific. State v. Bigsby, 40 S.W.3d 87, 91 (Tenn. Crim. App. 2000). The facts in the case at bar show more than mere presence and more than mere association with those selling drugs.

The evidence showed that on August 9, 2006, Ms. Dalton, the confidential informant, bought cocaine from the Defendant. On this occasion, after being unable to contact the Defendant by phone, Ms. Dalton and Agent Woodward proceeded to the Defendant's residence on Rock City Road. They encountered the Defendant, along with two other men, in "the loop" at "the end of the road." Ms. Dalton told the Defendant that she wanted to purchase an "eight" for $150, and they discussed whether he had $10 in change, as the two women only had $160. The Defendant motioned to Ms. Dalton to get out of her vehicle and come "to the other side of the truck" parked beside her. After she did so, the Defendant pointed to a cinder block, which contained a ten-dollar bill and two rocks of crack cocaine

inside. After retrieving the items, Ms. Dalton placed her money inside the block and left. Agent Woodward was able to observe the exchange "from the chest up." Later TBI testing revealed that the rocks were 1.3 grams of crack cocaine. The jury was able to assess the credibility of the witnesses and chose to accredit the testimony of both Ms. Dalton and Agent Woodward.

The evidence before us portrays the Defendant as a primary actor in the exchange. A rational juror could have concluded that the Defendant facilitated the sale of .5 grams or more of cocaine by arranging the terms of the sale to Ms. Dalton and that he delivered the cocaine to her. Viewed in the light most favorable to the prosecution and resolving all conflicts in favor of the State, we conclude that the evidence is sufficient to support the Defendant's convictions.

## *II. Inconsistent Verdicts*[3]

In a similar vein, the Defendant argues that the verdict is "inconsistent and improper," noting that at least two other individuals were present during the transaction and that no one else was charged in relation to the purchase. He submits, "It is an impossibility for [the Defendant] to be convicted of criminal responsibility when there was not enough evidence to arrest or indict the others that were present." The State asserts waiver on grounds that the Defendant failed to support the issue with argument, citation to authorities, or appropriate references to the record. Moreover, the State notes that consistency of verdicts is not required so long as the evidence established guilt of the offense upon which the conviction was returned, and there was sufficient evidence to support the Defendant's conviction for facilitation.

The Defendant argues that, by failing to indict either of the other two men present, he cannot be convicted under a theory of criminal responsibility. Again, the State correctly notes that the Defendant failed to support this issue with argument, citation to authorities, or appropriate references to the record. See Tenn. Ct. Crim. App. R. 10(b).

Furthermore, Tennessee law expressly forbids evasion of criminal liability on the ground asserted by the Defendant. In State v. Gennoe, this court upheld the conviction of a defendant for facilitation of sexual battery, even though his co-defendant had only been convicted of facilitation with respect to that same battery and was never convicted of the principal crime of sexual battery itself. 851 S.W.2d 833, 836 (Tenn. Crim. App. 1992). This court explained its holding in Gennoe by observing that, although old common law practice forbade the conviction of aiders, abettors, and accessories absent the conviction of the principal, the Tennessee legislature had specifically altered this practice by statute. See id.

---

[3] For the purpose of clarity, we have reordered and renumbered the issues as raised by the Defendant in his brief.

As amended in 1989, the Tennessee Code specifically provides that "it is no defense that . . . the person for whose conduct the defendant is criminally responsible has been acquitted, has not been prosecuted or convicted, has been convicted of a different offense or different type or class of offense, or is immune from prosecution." Tenn. Code Ann. § 39-11-407. By virtue of Tennessee Code Annotated section 39-11-407, the Defendant cannot benefit from the fact that none of the others present were prosecuted for this offense. See, e.g., State v. Nash, 104 S.W.3d 495, 500 (Tenn. 2003). The Defendant is not entitled to relief on this issue.

### III. Jury Instructions
#### A. Criminal Responsibility

On appeal, the Defendant argues that inclusion of a criminal responsibility instruction in the jury charge was error because there was no evidence he actually participated in the sale or delivery and it suggests that he could be guilty of the crime simply by being present. Furthermore, according to the Defendant, the instruction was improper because there was no evidence he actually participated in the sale or delivery. However, we have already determined that the evidence is sufficient to support his convictions.

The Defendant again posits this allegation without proper citation to the record. See Tenn. Ct. Crim. App. R. 10(b). The State further alleges that the Defendant has waived the issue by failing to raise a contemporaneous objection at trial and that counsel, in fact, acquiesced to the charge. See Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). We cannot conclude that counsel acquiesced to the charge, although the objection to the instruction was lodged on a different ground. During the colloquy surrounding the jury charge, defense counsel agreed to an instruction on facilitation as a lesser-included offense; then, noting his uncertainty on whether a theory of criminal responsibility should be charged in the indictment, he objected to inclusion of such an instruction in the charge on that basis. The issue of whether the instruction was proper was included in the Defendant's motion for new trial; he argued, "That the jury charge as to criminal responsibility is improper and has been given to conform to proof without giving the [D]efendant notice to defend." Because it is well-settled that a defendant cannot change theories for relief on appeal, waiver would be appropriate for this reason.

Addressing the merits of the issue presented on appeal, the State submits that the trial court gave a complete and proper charge of the law, which in no way prejudiced the Defendant. We agree. As previously outlined, a person is criminally responsible for an offense committed by another person when "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person

solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2). Our supreme court has explained that our criminal responsibility statute is premised on the view that "in addition to the primary criminal actor, aiders and abettors should be held accountable for the criminal harms they intentionally facilitated or helped set in motion." State v. Hatcher, 310 S.W.3d 788, 811 (Tenn. 2010) (quoting State v. Sherman, 266 S.W.3d 395, 408 (Tenn. 2008)). While a person's mere presence during the commission of a crime is not sufficient to confer criminal liability, it is not necessary that one physically commit the underlying offense; encouragement of the principal actor will establish such liability. Sherman, 266 S.W.3d at 408. A person convicted under a theory of criminal responsibility is considered a principal offender as if he committed the underlying offense himself. Hatcher, 310 S.W.3d at 811. There was sufficient evidence to warrant an instruction on criminal responsibility.

### B. Input from the Defense

The Defendant also submits that the jury instructions were given without input from defense counsel. The Defendant only elaborates with a one-sentence argument: "Without prior notice of the specific instructions to be given to the jury, there was no opportunity for [the Defendant] to determine if additions or substitutions should have been argued t[o] the court." The State argues that the issue is waived because the Defendant failed to support the issue with argument, citation to authorities, or appropriate references to the record. Once more, we agree that waiver is appropriate. See Tenn. Ct. Crim. App. R. 10(b).

Moreover, the record belies the Defendant's assertion and evinces that defense counsel was given every opportunity to discuss the proposed jury instructions and that discussion did, in fact, occur on the proposed charge and the possible lesser-included offenses. The Defendant has not cited to any precedent, and we know of none, which requires that the trial court give advanced notice of the proposed jury instructions. See State v. Torrez Talley, No. W2003-02237-CCA-R3-CD, 2006 WL 2947435, at *19 (Tenn. Crim. App. Oct. 16, 2006) (noting that Rule 30 of the Tennessee Rules of Criminal Procedure does not require that the trial court give the parties a copy of its proposed jury instructions in advance; rather, Rule 30 only requires that the court inform the parties of its proposed action on the submitted special requests and portions of the instructions that are inquired by the parties), perm. app. denied, (Tenn. Mar. 19, 2007). Accordingly, we conclude that there is no error in regard to this issue.

### IV. Sentencing

The Defendant makes the broad allegations that he was denied an opportunity to

present evidence at his sentencing hearing and that his sentence is excessive.[4] Specifically, he contends that he was not allowed to present any evidence regarding his offender status and that the thirty-year sentence, enhanced solely based on his criminal record, was imposed without consideration of the principles of sentencing, alternative sentencing, or his potential for rehabilitation. According to the Defendant, the trial court's failure to conduct a more thorough analysis renders the sentence improper. Regarding his status as a career offender, he submits that the trial court erred when it separately considered convictions for sale of cocaine from December 19, 1994, because they were all part of a single course of conduct. He notes that the sales occurred over a period of one and one-half months, during an ongoing undercover operation, and that the same confidential informant was involved in each sale. Thus, he submits that he only had two felony convictions, placing him instead in the Range I, standard offender category.

The State again correctly cites to the Defendant's complete failure to comply with the requirements for appellate briefs in regards to these allegations. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). Alternatively, the State asserts that the Defendant was correctly determined to be a career offender, having been convicted of ten counts of sale and delivery of cocaine and one count of burglary.

As relevant to this case, in Tennessee, a career offender is one who has "[a]ny combination of six (6) or more Class A, B or C prior felony convictions, and [whose] conviction offense is a Class A, B or C felony." Tenn. Code Ann. § 40-35-108(a)(1). A trial court determines whether an offender should be classified as a career offender by looking solely at prior convictions. If the trial court finds that an offender is a career offender, the trial court has no discretion regarding the sentence to be imposed. The trial court is required to impose "the maximum sentence within the applicable Range III." Tenn. Code Ann. § 40-35-108(c).

For purposes of range enhancement, "[c]onvictions for multiple felonies committed within the same twenty-four-hour period constitute one (1) conviction for the purpose of determining prior convictions[.]" Tenn. Code Ann. § 40-35-108(b)(4). The ten certified judgments introduced by the State as exhibits at the sentencing hearing, and included in the record on appeal, reflect that the Defendant committed the Class C felony offense of sale of

---

[4] As the Defendant's sixth issue presented for review in the "Question Presented for Review" section of his brief, the Defendant argues that, although he "was given notice of enhancements," he "was not provided a sentencing hearing to determine his offender level, or given an opportunity to present facts in mitigation[.]" There was a sentencing hearing in this case on January 15, 2008. Counsel is cautioned to accurately characterize the record in the future.

cocaine on November 22, November 25, November 29, December 14, and December 27 of 1993, and on January 4, January 12, and January 27 of 1994. All of these convictions were entered on the same day by the same court. No aggravated burglary judgment form is included in the appellate record, but such a conviction is noted in the presentence report.

A "certified copy of the court record of any prior felony conviction, bearing the same name as that by which the defendant is charged in the primary offense, is prima facie evidence that the defendant named in the record is the same as the defendant before the court, and is prima facie evidence of the facts set out in the record." Tenn. Code Ann. § 40-35-202(a). Our sentencing statutes further provide that

> reliable hearsay, including, but not limited to, certified copies of convictions or documents, may be admitted if the opposing party is accorded a fair opportunity to rebut any hearsay evidence so admitted; provided, that this subsection (b) shall not be construed to authorize the introduction of any evidence secured in violation of the United States or Tennessee constitutions.

Tenn. Code Ann. § 40-35-209(b).

Despite his assertion to the contrary, the Defendant was provided the opportunity to rebut the accuracy of his range classification status and, in fact, did so, raising the precise argument presented on appeal. Before the trial court, the Defendant conceded that the offenses were not committed within twenty-four hours of each other but argued that they were a "single course of criminal conduct." The trial court determined that at least six of the offenses were not committed within twenty-four hours of each other.

The Defendant contends that the offenses should nonetheless be considered merged because they shared elements of "a single course of criminal conduct." However, the judgments of conviction reflect at least eight separate offense dates, and the fact that they were part of ongoing undercover investigation of the Defendant is of no import. See, e.g., State v. Gregory L. Sain, No. M2006-00865-CCA-R3-CD, 2008 WL 624924, at *12 (Tenn. Crim. App. Mar. 6, 2008), perm. app. denied, (Tenn. July 7, 2008).

We agree with the trial court that the Defendant has sufficient separate prior convictions for range enhancement purposes. Because the Defendant had the requisite number of prior felony convictions to qualify as a career offender pursuant to Tennessee Code Annotated section 40-35-108, the trial court was obligated to sentence the Defendant to the maximum within the range. Thus, we affirm the imposition of his thirty-year sentence.

## CONCLUSION

After a thorough review of the record, we affirm Defendant's convictions and his thirty-year sentence. Accordingly, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE